IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JUAN SANTIAGO, MARIA SANTIAGO )<br>)<br>  Plaintiffs, )<br>)<br>VS. )<br>)<br>CASE IH a/k/a CNH INDUSTRIAL )<br>AMERICA, LLC; and )<br>)<br>ROBERT BOSCH GMBH, ROBERT )<br>BOSCH, LLC, )<br>)<br>  Defendants. ) | CA NO. _____<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

COMES NOW Plaintiffs, Juan Santiago and Maria Santiago, complaining of Defendants Case IH a/k/a CNH Industrial America, LLC Robert Bosch GmbH, and Robert Bosch, LLC, and for cause of action would show the Court the following:

### PARTIES

1. Plaintiff Juan Santiago is an individual and a domiciliary and resident of the State of Texas. At all times mentioned herein, he was married to Maria Santiago, and they resided in Concho County, Texas.

2. Plaintiff Maria Santiago is an individual and a domiciliary and resident of the State of Texas. At all times mentioned herein, she was married to Juan

Santiago, and they resided in Concho County, Texas.

3.     Defendant Case IH is a brand name of agricultural equipment owned by CNH Industrial America, LLC ("Case IH"), a Delaware corporation, engaged in business in the State of Texas, with its principal place of business located at 621 State Street Racine, Wisconsin 53402.  Case IH is in the business of designing and manufacturing and selling agricultural equipment, such as the equipment at issue in this case and is also the responsible seller of the Bosch switch under chapter 82 of the Texas Civil Practice and Remedies Code.  Case IH may be served with process through its registered agent at C T Corporation System, 1999 Bryan St. Ste. 900, Dallas, TX 75201, and the issuance of citations for service is requested at this time.

4.     Defendant Robert Bosch GmbH (hereafter referred to collectively with Robert Bosch, LLC as "Bosch"), is a German corporation with its principal place of business in Stuttgart, Germany. Robert Bosch GmbH engages in the for-profit business of manufacturing and selling component part products for vehicular and industrial machinery, like the switch made basis of this lawsuit, which are sold in the United States and Texas. Robert Bosch GmbH does not maintain a regular place of business in Texas and has not designated a registered agent for service of process in Texas or in the United States.  Pursuant to Sections 17.044 and 17.045, Texas Civil Practice and

Remedies Code, Bosch will have been served by serving duplicate copies of process upon the Secretary of State, 1019 Brazos Street, Austin Texas, 78701. Robert Bosch GmbH can be served with process pursuant to the Hague Convention at Robert-Bosch-Platz 1, 70839 Gerlingen-Schillerhohe, Baden-Wuerttemberg, Germany, and the issuance of citations for service is requested at this time.

5.     Defendant, Robert Bosch, LLC (hereafter referred to collectively with Robert Bosch GmbH as "Bosch"), is a Delaware limited liability corporation, engaged in business in the State of Texas, with its principal place of business located in Illinois or Michigan (and, in any event, not Texas). Robert Bosch, LLC engages in the for-profit business of manufacturing and importing and selling and distributing component part products for vehicular and industrial machinery, like the switch made basis of this lawsuit, which are sold in the United States and Texas. Robert Bosch, LLC may be served with process through its registered agent at Corporation Service Co. d/b/a CSC—Lawyers Incorporating Service Co., 701 Brazos, Suite 1050, Austin, TX 78701, and the issuance of citations for service is requested at this time.

## VENUE AND JURISDICTION

6.     The sale and warranting of the Case IH combine at issue occurred in San Patricio County, Texas.

7. The sale and warranting of the Bosch switch at issue occurred in San Patricio County, Texas.

8. The sale and warranting of the combine and switch at issue are a substantial part of the events giving rise to the claims set forth below.

9. Venue in this Court is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to this claim occurred in the Corpus Christi Division of the Southern District of Texas.

10. This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiffs and Defendants because Plaintiffs are citizens of the State of Texas and Defendants are foreign businesses that maintain their principal places of business outside of the State of Texas.

11. The amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

12. Defendants are subject to the Texas long-arm statute by doing business in Texas and there by purposefully availing themselves of the privileges and benefits and protections of the laws and of Texas.

13. Defendants are subject to the Texas long-arm statute by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Texas.

14. Defendants are subject to the Texas long-arm statute by contracting, directly or through agents they control, with Texas entities or by performing such contracts, at least in part, within Texas or by recruiting Texas residents for employment and by a combination of these Texas-directed activities.

15. From the sale and warranting through the catastrophic failure and the consequential manifestation of the egregious damages, the episode-in-suit occurred in Texas.

16. This Court has specific personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting activities in the State of Texas by placing their products, including the combine and switch at issue in this lawsuit, into the stream of commerce, and have engaged in other activities with Texas citizens establishing continuous and systematic contacts sufficient to confer personal jurisdiction.

17. Texas has an interest in overseeing this litigation which involves a serious injury to a Texas resident and defective products sold into Texas.

18. Case IH maintains an active and interactive website where it exchanges information with Texas residents at http://www.caseih.com/ where Texas residents can purchase products on-line and where Case IH directs Texas residents to retail shops located in Texas and where Case IH offers products and marketing directed at Texas.

19.     Case IH has delivered its products into the stream of commerce with an expectation that they will reach Texas.

20.     Case IH has purposefully shipped products through a distributor with the expectation that they will be sold in Texas.

21.     Case IH has made decision to introduce products into Texas.

22.     Case IH has been directly involved in purposeful activities that led to the sale of products into Texas.

23.     Case IH has entered into sales or distribution agreements which cover a sales territory including Texas.

24.     Case IH is now and was at the time of the sale of the Case IH combine at issue aware that the sales and distribution of its products extend throughout into Texas.

25.     Case IH has made no attempt to limit the scope of marketing efforts to exclude Texas.

26.     During the period from the date when the Case IH combine was designed until May 5 of 2016, many Case IH combines were sold to customers in Texas and the sale of the Case IH combine at issue in this case was not an isolated incident.

27.     During the period from the date when the Case IH combine was designed until May 5 of 2016, a significant percentage of the type of Case IH

combines of the type at issue in this civil action were sold to customers in Texas.

28.   During the period from the date when the Case IH combine was designed until May 5 of 2016, Case IH has directly and indirectly profited from many lucrative sales of Case IH combines sold to customers in Texas and the profits from the Case IH combine at issue in this case was not an isolated incident.

29.   Case IH could have reasonably anticipated being haled into court in Texas.

30.   Bosch has delivered its products into the stream of commerce with an expectation that they will reach Texas.

31.   Bosch has purposefully shipped products through a distributor with the expectation that they will be sold in Texas.

32.   Bosch has made decision to introduce products into the United States, including Texas.

33.   Bosch has been directly involved in purposeful activities that led to the importation and sale of products into the United States, including Texas.

34.   Robert Bosch, LLC is a wholly owned subsidiary of Robert Bosch GmbH.

35.   Robert Bosch, LLC and Robert Bosch GmbH have overlapping

members of their management groups.

36. Robert Bosch GmbH has participated in reviews of Robert Bosch, LLC marketing reports and plans.

37. Robert Bosch GmbH has participated in reviews of Robert Bosch, LLC business and progress reports and plans.

38. Robert Bosch GmbH has worked with Robert Bosch, LLC to introduce it to the American market, including the Texas market.

39. Robert Bosch GmbH's relationship with Robert Bosch, LLC is such that the forum contacts of one is fairly attributed to both.

40. Robert Bosch, LLC is the assignee of Robert Bosch GmbH's intellectual property rights applicable in Texas.

41. Robert Bosch, LLC is the assignee of Robert Bosch GmbH's intellectual property to a degree that Robert Bosch GmbH's could not effectively profit from this intellectual property in the United States without relying on Robert Bosch, LLC.

42. Robert Bosch, LLC is the assignee of Robert Bosch GmbH's intellectual property to a degree that Robert Bosch, LLC actively litigates in United States courts to defend Robert Bosch GmbH's intellectual property rights.

43. Bosch sells its product to a national distributor and so it does not violate

due process to require Bosch to defend a products liability suit in that state where the injurious episode-in-suit occurs. *Cf. Sells v. Int'l Harvester Co.*, 513 F.2d 762, 763 (5th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976).

44. Robert Bosch GmbH, directly or through Robert Bosch, LLC, has entered into sales or distribution agreements which cover a sales territory across the entire United States, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177–79 (5th Cir. 2013).

45. Bosch is now and was at the time of the sale of the Bosch switch at issue aware that the sales and distribution agreements to market its products extend throughout the entire United States, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

46. Bosch made no attempt to limit the scope of marketing efforts to exclude Texas, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

47. During the period from the date when the Bosch switch was designed until May 5 of 2016, many Bosch switches were sold to customers in Texas and the sale of the Bosch switch at issue in this case was not an isolated incident, and this supports this Court's exercise of specific personal

Case 2:16-cv-00473   Document 1-1   Filed in TXSD on 11/04/16   Page 10 of 20

jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

48. During the period from the date when the Bosch switch was designed until May 5 of 2016, a significant percentage of the type of Bosch switches of the type at issue in this civil action were sold to customers in the United States, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

49. During the period from the date when the Bosch switch was designed until May 5 of 2016, a significant percentage of the type of Bosch switches sold to customers in the United States were sold to customers in Texas, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

50. During the period from the date when the Bosch switch was designed until May 5 of 2016, Bosch has directly and indirectly profited from many lucrative sales of Bosch switches sold to customers in Texas and the profits from the Bosch switch at issue in this case was not an isolated incident, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

51. Bosch designed the switch as issue for uses including for use on a combine such as the Case IH combine at issue, and Bosch reasonably could have expected that sales of its switches would be made in Texas, given the

Original Complaint                                                                                                   Page 10

fact that Texas is one of the largest markets for such combines in the United States, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

52. Bosch could have reasonably anticipated being haled into court in Texas, and this supports this Court's exercise of specific personal jurisdiction. *Cf. Ainsworth*, 716 F.3d at 177–79.

53. If Robert Bosch GmbH evades this Court's jurisdiction, Case IH is liable for the harm caused by the Bosch switch under section 82.003(a)(7)(B) of the Texas Civil Practice and Remedies Code.

54. The exercise of personal jurisdiction over Defendants will neither burden Defendants nor offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

## FACTS AND CLAIMS

55. On May 5, 2016, in Concho County, Texas, Juan Santiago suffered catastrophic injuries after the batteries to a Case IH model 8230 combine (product identification number YDG222637) had been charged, and he turned on the Bosch switch.

56. Juan Santiago was catastrophically injured when gaseous fumes inside the battery box ignited and the battery box cover blew off, striking him

in the head and face.

57. The Case IH combine came pre-installed with the Bosch switch, and it was purchased by Juan Santiago's employer, Lonnie Kellermeier, from Hlavinka Equipment Co. in San Patricio County, Texas.

58. The environment near the battery box on the Case IH combine foreseeably included the hazardous meeting of hydrogen and oxygen and electrical arcs.

59. The switch enclosure was not properly sealed for use within an environment like the hazardous environment foreseeably encountered in association with the use of that switch on the Case IH combine.

60. The switch enclosure was not properly designed for use within an environment like the hazardous environment foreseeably encountered in association with the use of that switch on the Case IH combine.

61. The switch was not properly tested for use within an environment like the hazardous environment foreseeably encountered in association with the use of that switch on the Case IH combine.

62. The dangers associated with the use of the combine and the switch were known or would have been known if reasonable skill and foresight were applied to the matter.

63. The combine and the switch reached the field in an intended and

foreseen condition that was more dangerous than would have been contemplated by an ordinary user of the combine and the switch with ordinary knowledge common to those who use such combines and switches in the field.

64. The battery box and the switch and the Case IH combine reached the field for use by Juan Santiago in a configuration that was intended and reasonably foreseeable for the use of those products as Juan Santiago was using them when he was catastrophically injured.

65. The battery box and the switch and the Case IH combine reached the field for use by Juan Santiago with operational characteristics that were intended and reasonably foreseeable for the use of the switch and combine.

66. The Case IH combine and its Bosch switch were without substantial or material or unforeseeable change in their condition from the time they were marketed and sold by Defendants up to the time the battery box exploded.

67. The battery enclosure is unreasonably dangerous and defectively designed as a result of its failure to allow for the proper ventilation of explosive gases emitted from the batteries contained within the battery enclosure.

68. When the combine and the battery box and the switch were placed into the stream of commerce, an alternative design for the battery enclosure to

allow for the proper ventilation of explosive gases emitted from the batteries contained within the battery enclosure was technologically feasible, economically feasible, would not have impaired the utility of those products, and would have significantly mitigated or eliminated the risk of explosion that manifested on the occasion when Juan Santiago was catastrophically injured.

69. The selection of the battery type chosen for use within the battery enclosure was unreasonably dangerous and defectively designed and was negligently and improperly chosen because the batteries were not designed to facilitate ventilation of explosive gas to the environment outside and beyond the battery enclosure.

70. The selection of the battery type chosen for use within the battery enclosure was unreasonably dangerous and defectively designed and was negligently and improperly chosen because the batteries were not designed with an integrated hazardous gas vent manifold which could have been connected to a tube and routed to the exterior of the battery box

71. The selection of a battery disconnect switch that was not properly designed or tested for use within the hazardous environment foreseeably contained within the battery enclosure was unreasonably dangerous and defectively designed and was negligently and improperly chosen

72. Defendants continuously and systematically sell agriculture equipment products and components throughout the Southern District of Texas.

73. Defendants were and are in the business of selling agriculture equipment and components of the type at issue in this matter to consumers for the use by persons such as Juan Santiago by transactions which were commercial in nature.

74. The communication between Bosch and Case IH included carelessness on both sides with regard to the representations and exchange of information and instructions and warnings with respect to the selection of the Bosch's switch in Case IH's combine.

75. The warnings and instructions associated with the combine and the battery box and the switch were unreasonable and inadequate to catch the attention of a reasonably careful person in Juan Santiago's circumstance when he was using the combine and switch at the time he was injured.

76. The warnings and instructions associated with the combine and the battery box and the switch failed to adequately convey a fair indication of the dangers associated with use of the combine and the battery box and the switch and inadequately conveyed how an average user of the combine and the battery box and the switch could avoid those dangers.

77. Case IH placed into the stream of commerce a combine that was unfit

for its foreseeable and intended and warranted uses under circumstances where the combine was prone to cause injury under ordinary and foreseeable use.

78. Bosch placed into the stream of commerce a switch that was unfit for its foreseeable and intended and warranted uses under circumstances where the switch was prone to cause injury under ordinary and foreseeable use.

79. All conditions precedent to filing this civil action have occurred. *See, e.g., Ex. A* (incorporated by reference to show compliance with the condition precedent of providing notice of the claims at issue and to assist Defendants' compliance with Fed. R. Civ. P. 26(a)(1)(A)(i), (ii)).

## DAMAGES

80. As a direct, foreseeable, and proximate result of the occurrence and the above-described actions of Defendants, and of the defects identified above, Plaintiff Juan Santiago sustained massive facial and head injuries, including but not limited to a blast injury to the mid face resulting in complete evulsion of the nasal bones, anterior medial orbital walls and anterior medial maxillary bones with extension into both maxillary sinuses, disruption of the anterior nasal septum, left and right orbital floor fractures, scleral lacerations to both eyes and partial avulsion of the eyelid tissues of both eyes resulting

in permanent blindness in both eyes and neck strain.

81. Juan Santiago sustained serious injury to his body, resulting in extreme physical and mental pain, suffering and anguish, disfigurement, impairment, and other injuries. He has suffered and will continue suffer damages in the following respects:

    a. extreme physical pain and mental anguish in the past;

    b. physical pain and mental anguish which in reasonable probability will be suffered in the future;

    c. reasonable and necessary medical expenses incurred in the past;

    d. medical expenses which in reasonably probability will be incurred in the future;

    e. physical impairment in the past;

    f. physical impairment which in reasonable probability will be suffered in the future;

    g. disfigurement in the past;

    h. disfigurement which in reasonable probability will be suffered in the future;

    i. loss of earnings in the past; and

    j. loss of earning capacity which in reasonable probability will be

sustained in the future.

82. Juan Santiago's injuries are permanent and disabling, and he should be awarded an amount substantially in excess of the minimum jurisdictional limits of this Court as a fair and reasonable compensation for his injuries.

83. Plaintiffs Juan and Maria Santiago's damages as a result of the permanent and disabling injuries to Juan Santiago include the past, current, and future loss of consortium and household services, including the loss of marital felicity, solace, comfort, companionship, emotional support, society, assistance, love and sexual affection and relations, plus the lost value as a result of the impairment as it had undermined the performance domestic duties that Juan Santiago can no longer fulfill.

84. Plaintiffs would further show that the Defendants, acting through their agents, servants and employees, and which acts of its agents, servants and employees were approved of or ratified by Defendants, evidenced conscious indifference to the rights, safety and welfare of others when they knew, or by the exercise of reasonable diligence should have known, of unreasonably dangerous conditions, defective products, and unconscionable acts. Such constituted malice, fraud, and actual conscious indifference to the rights, safety and welfare of others on the part of Defendants and such conscious indifference to the rights, safety and welfare of others, including Plaintiffs,

was a direct and proximate cause of the incident in question, the injuries to Plaintiffs, and the damages resulting therefrom.

## PRAYER

85. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final trial Plaintiffs have and recover judgment against Defendants, for damages proved, general and special; that they be awarded punitive damages on any and all Counts on which punitive damages are recoverable; for their attorney's fees and costs associated with the prosecution of this action, as allowed by Texas law; interest at the highest legal rate accruing before and after the date of judgment until same is paid, and for all other and further relief, general and special, legal and equitable, to which Plaintiffs may be justly entitled.

## DEMAND FOR JURY TRIAL

86.     Plaintiffs demand a jury trial.

                                              Respectfully submitted,

                    By:    <u>/s/ John Gsanger</u>
                            John Blaise Gsanger
                            Federal I.D. No. 20883
                            State Bar No. 00786662
                            jgsanger@edwardsfirm.com
                            **THE EDWARDS LAW FIRM**
                            1400 Frost Bank Plaza 78401

Corpus Christi, Texas 78403-0480
Tel:  361/698-7600
Fax:  361/698-7614

**ATTORNEY-IN-CHARGE**

Carlos Rodriguez
State Bar No. 24041804
crod@webbstokessparks.com
Mary Noel Golder
State Bar No. 08089700
mngolder@webbstokessparks.com
Max Parker
State Bar No. 15502500
mparker@webbstokessparks.com
**WEBB, STOKES & SPARKS, L.L.P.**
P.O. Box 1271
San Angelo, Texas 76902
Tel:  325/653-6866
Fax: 325/655-1250